Whenever you're ready, Counsel. Thank you. And we'll wait for them to get ready, too, so. Good morning, Your Honor. Stephen Montoy, Your Honors. Stephen Montoy on behalf of the appellant, Salvador Reza. I'd like to reserve, if I might, four minutes of time for rebuttal. Keep track of your own time, but we'll try to help you. Yes, Your Honor. Thank you. I think this is a simple case. And it's a simple case because it involves a very simple and very fundamental lack of evidence. As everyone knows, as this Court has repeatedly announced, in order to arrest somebody, you have to have probable cause. Now, if you arrest somebody without probable cause, but it was a reasonable mistake, as Your Honors know, you're entitled to qualified immunity. But the mistake has to be reasonable. And in this case, that's a factual question. And under the longstanding case law, it's 25 years old, goes all the way back to 1990, in this Court's opinion in White v. City of Norwalk, in order to kick somebody out of a public hearing, they have to be ---- Wait, wait, wait. Yes. I want to be sure I understand your point. Yes, Your Honor. What kind of a forum is this? It's a limited public forum. Okay. So this is ---- And I think everyone agreed on that, including the district court. Okay. So we're not talking about a street corner. We're not talking about a street corner. No, Your Honor. Absolutely not. We never suggested otherwise. And, Your Honor, Your Honors, I'm a little bit hard of hearing. It's a limited public forum. Thank you. So the presiding officer certainly has some discretion to maintain order. There's no question about that. But this Court has repeatedly, for the past 25 years, going back to White v. City of Norwalk, said it again very extensively before the events in question. In 2011, an in-bank decision, no dissenters, the concurrences by former Chief Judge Kaczynski and Judge Reinhart actually strengthened the rule. Hey, you can kick somebody out, but they have to be actually disruptive. Counsel, can I ask you to ---- Absolutely. Can we separate out the two? I don't know if this will help. Thank you. I think when we get closer to the mics, somehow it makes it harder to hear. I'm sorry. Are you able to hear me? Yeah, I can hear you. Why don't we separate out the Senator from the officers? Absolutely. Because I think the analysis is different. So why don't you start wherever you want, and I'll ask you the questions I have about that. Okay. The officers say, hey, we only arrested this guy because the Senator told us to. Right. The Senator said he was disturbing, a hearing. No, no, no, no. The Senator didn't say that. The Senator said ---- Kick people out who are disturbing. Whoever was disruptive. He said he'd store order. But he said ---- But in this context, under this Court's well-established authority, it can't be a mere breach of decorum. It has to be an actual disturbance. And in this case ---- I think you're moving to the wrong direction, frankly, counsel. Yes, Judge Wallace. I think we have to focus on what the Senator knew. I'll tell you. And so unless you're charging that he can't rely upon the Sergeant at Arms and the police for information as to what was happening in the other room, which the findings indicate they could hear, it seems to me that it may be irrelevant whether your client was even involved if the Senator could reasonably believe that all he was doing was generally telling them what to do, and he didn't even know if your client was in there. I understand, Your Honor. And I'd like to say the appellant has no disagreement with what Your Honor said.  Then where's ---- I think that is the appropriate question. Okay. What did Senator Pierce know? Reasonably know. He ---- I'll tell you one thing he didn't know that's dispositive and that is not disputed on this record. He did not know there was an actual disruption in the actual hearing room because no one told him that. On page ---- on the hearings, on page 7, line 18, it said the plaintiff was disruptive during the hearing. Yes, Your Honor. And they were told that by Safety Sergeant Jeff Trapp. Isn't that sufficient? No, no, Your Honor. And that's a good start. But based upon this Court's unequivocal opinion in Norse v. City of Santa Cruz, it ---- you can't just say someone was disruptive. You have to say the hearing was actually disruptive. Now, Your Honor, if someone would have told Senator Pierce, hey, Senator, this guy, Salvador Ressa, he just won't shut up in this hearing. He's disrupted it. Could Senator Pierce rely on that? Absolutely. Is there any evidence, counsel, that Senator Pierce knew that Mr. Ressa was there in the building? He denied it. The short answer is no, but there doesn't need to be. If someone told him he was there or if someone told him that the hearing was actually disrupted, what I'm saying, Your Honors, is that somebody would have had to tell Senator Pierce that there was an actual disruption in the hearing room. That's the dispositive question. As you know, in almost everything of a legal nature, there's a dispute about what actually happens. There's not in this case, Your Honor. Well, with respect, I don't think the record suggests that. I think the record suggests there is a difference of agreement. You say one thing. The other side says another thing. You can cite one thing. They can cite something else. But it really gets down, does it not, to what my colleague indicated, which is, is Senator Pierce entitled to rely upon what he was told by the officers? And my response to that would be yes, if someone told him Mr. Ressa actually disrupted the hearing. Does it have to be Mr. Ressa? If they said to him, you know, in this adjoining room here, we've got a lot of people making a lot of noise, and they're yelling and shouting and clapping and whatever, and it's bothering people in the other room. And Pierce says, we've got to maintain decorum here. Anybody that's doing that, keep them out. Is there a problem with that? Yes, there is, Your Honor. And what is that? I'll tell you. Because merely bothering people in the hearing. I'm using the wrong word. This is at a time when one of our former colleagues was murdered. I knew him personally, Your Honor. Very closely. I understand. People were gun-shy, quite literally. They were scared. They were worried. And this environment undoubtedly played some role. And I think that clearly has to factor into the reasonableness issue, does it not? Your Honor, I think so. However, that factor, that fear alone under the Norse v. City of Santa Cruz case is not enough. It can't be virtual disruptance, constructive disturbance. It has to be an actual disruption. What is an actual disruption? Your Honor, in all the three cases, this Court has considered that issue. White v. City of Norwalk, Norse v. City of Santa Cruz, Acosta v. City of Costa Mesa. Here's what it is. You have, and we've all seen it, I bet. Someone's in a hearing room and someone won't shut up. Someone speaks out of turn when they're told to be quiet and sit down. They refuse to. In this Court's most recent consideration of it, Acosta v. City of Mesa, they actually had to drag the guy out of there. In Norse v. City of Santa Cruz, the guy's making the Nazi salute to one of the presiding officers during the hearing. Your assumption is, and maybe it's a valid assumption, that the overflow row isn't part of the hearing. That's true. You have to make that assumption. Well, it's a separate room, but according to the records I understand it, some could hear the disruption. Yes, Your Honor, but the only eyewitness is a defendant in this case, Officer Burton, on Volume 2, page 95 of the record. He says nothing in the overflow room actually disrupted the hearing. And here's our basic point. Wait a minute. That's a conclusion of the law. He doesn't get to make that. That's our job. Well, disruption is two things. But why isn't the overflow room, these people are all coming to hear the hearing, why isn't the overflow hearing that has the TV and they're watching, why isn't that part of the hearing chambers? Well, Your Honor, because it's literally not part of the hearing chambers. It's a different room. For example, I can watch Your Honor's arguments downstairs in the cafeteria, but Your Honors can't hear me yaying or booing. Okay, suppose I can hear you. Well, then if you can't hear me and you tell me to shut up, Your Honor, I better shut up, otherwise I'm going to be disrupted and subject to ejection. So it isn't a question of a separate room. It's whether or not they can hear. Yes, Your Honor. What's the record show as to whether or not the participants in the hearing could hear the disruption? There is no evidence, and that's the problem. And I think the strongest evidence that there was no disruptions on Volume 2, page 95, when Defendant Burton says, hey, I asked him, I was the trial counsel, did anything that happened in the overflow room disturb the actual hearing? The answer was no. Did you personally witness the hearing in the actual Senate room being disrupted by anything that was transpiring in the overflow room? Answer, no, page 95. What about Sergeant-at-Arms Kubacki? You know what? Good point, Your Honor. Judge Wofford, he never testified. He did testify, hey, there were people booing and cheering in the overflow room, but he never testified that that had any actual disruption in the actual hearing room. And, moreover, Your Honor, neither did the Sergeant-at-Arms. He said he never testified there was an actual disruption either. Neither did Senator Pierce. None of the three defendants did. Senator Pierce, I'm just looking at I think this is his declaration. I don't know what he might have testified to in deposition. But Senator Pierce's declaration said that around 10 o'clock it was reported to him that the crowd in the overflow room became disruptive, making it difficult for the Senate to conduct its business. And, Your Honor, in our view, that's not enough, because in all of your cases, you ask for of course you ask for specifics. Life is based upon specifics. Oh, there was a disruption in the Senate room? Tell me what happened. And, moreover, tell me who caused it. I'd like to reserve the remainder of my time to rebuttal. Yes, Judge Wallace. One thing you might take a look at. In the order on page 1, lines 23, 24, 25, during the hearing both opponents and supporters of the legislation in the overflow room could be heard to cheer and boo, causing disruption in the Senate hearing room. That's a finding by the district judge. Yes, Your Honor, and when you look at those paragraphs in the defendant's statement of facts that allegedly support that, we denied them. And, moreover, we also adduced evidence from one of the defendants themselves, Officer Burton, that in fact there was no disruption to part of the record that I recited to Your Honor. There's a dispute, but it's a finding of fact which has to be set aside only if it's clearly erroneous. Well, no, Your Honor, because this was not a trial. The clearly erroneous standard only applies to findings of fact when the court is sitting as a finder of fact. When the court is sitting adjudicating a motion for summary judgment, all we have to show is a material factual dispute, which we have shown by the testimony of a defendant. Okay, you've got some more time for rebuttal. Let's hear from the other side. Thank you, Your Honors. Good morning, Your Honors. My name is Lou Anne Rosen, and I represent Defendant Appley Jeff Trapp, one of the officers, and so I'll be focusing on the officer's issue. Are you going to divide up your time? We are five minutes each, so what we're going to do. Well, of course, we're interested in the senator. It was a more difficult issue. It is, and so I could probably be even briefer than the five minutes. The issue is whether, based on the allegations in the complaint, the officers are entitled to qualified immunity for arresting Mr. Reza, and the officers are protected under qualified immunity because they had a reasonable belief that probable cause existed to arrest him for trespass on the date that he came into the Senate building. The officers were objectively reasonable in relying on the Senate president's order. If you look at Judge Martone's, he talks about the Senate rules that gives the Senate president the authority to control the building. He issued the order that anyone who was disruptive on the night, the two nights before, would be banned from the Senate building. When Mr. Reza came in, he certainly wasn't committing trespass when he entered  but when the officers then confronted him and told him that they had a valid order from Senator Pierce and he wasn't allowed in the building, rather than leave the building, he told the officers, well, I'm here to meet with another senator. He asked them for documentation. He basically didn't leave the building at the request of the officers. So it's different from some of the other cases where, for example, the Wall case, where the gentleman there was actually trying to leave the building at the officer's request and ended up being arrested on a different charge there. So unless the Court actually has any questions, I'll go ahead and turn it over to counsel for Officer Burton. Okay. Any questions? No, please. Thank you. Good morning, Your Honor. Sandra Slayton, and I'm representing Officer Burton. And as you know, and I'll try to be brief as well, although this is analyzed de novo, it's analyzed under the 12b-6, the four corners of the complaint. And yes, Officer Burton and Officer Trapp are definitely distinct in that regard from the senator. Well, and Officer Burton is distinct from Officer Trapp as well, right? Really, he is. Well, in a negative way. I don't think so. Okay. Why? But he at least is one of the officers who supposedly observed this disruption, right? And we have, I mean, I can't remember exactly how it was framed in the complaint, but we certainly know from Mr. Reza's side that he is flatly denying that Officer Burton observed him do anything that was disruptive. Well, again, that's why I mentioned Rule 12b-6. We have, it's a very difficult, it's very, there's a lot of ambiguity here, because it was a combined brief on the part of appellant and then a combined response brief. But I actually filed the motion to dismiss on behalf of Officer Burton along with Ms. Rosen on behalf of Officer Trapp. It was decided months before they were dismissed out of the case on the motion to dismiss under the allegations, under the analysis of Judge Martone, which I think was a very accurate analysis and a correct one. And months later, Officer, within the context, as a witness in the case, Officer Burton was called in the context of the motion for summary judgment. I don't think it was so clear that, I don't think it was that clear if you read the entire deposition. I wasn't, frankly, involved in defending or prosecuting the motion for summary judgment. My client had been dismissed out of it. Let me be sure I understand this. Are you saying procedurally that the two officers are not parties anymore? That's exactly what I'm saying. And they were dismissed. At the time Officer Burton's deposition was taken, he wasn't a party. So they're strictly witnesses. So what are we even talking about qualified immunity if they have no potential liability because they're not parties? That's right. Well, because it wasn't, because it was a very, again, we moved in the district court to have a final judgment during the case. And that was denied as moot because then Judge Martone granted everything and there was a final judgment. So we were always like in never-never land as far as a final judgment because there was a party still left in the action. Are you saying that at this point you obviously agree there was a final judgment or we don't have jurisdiction, right? Yes, of course. And you're saying that your client was dismissed early on but there was no finality to it, not because the judge issued 12B-6 with prejudice but rather just didn't enter the order. Is that right, basically? Didn't enter the order. And then we again asked him, we asked him for it and it was just denied. And then we entered another, we actually asked again at the end of the case and the judge denied it as moot. And he said now there's a final order as to everybody. But the point is even if Officer Burton, let's just say Officer Burton had been, to carry on with your analysis, Your Honor, and Officer Burton had said, you know, and I think they twisted and they took bits and pieces of it, but let's just say he said, oh, there was no disruption. This is not about Officer Burton coming into that overflow room and carrying the plaintiff out. This is about Officer Burton two days later having an order from the Senate president. And let's not forget that Officer Burton is, it's his whole job, him and Officer Trapp. But, Counsel, this is, I think I know where you're going, but this is my problem with Officer Burton. If he was the source of the information that Senator Pierce relied upon to issue this, what you're calling a facially valid order, and the plaintiff had alleged that in fact there was no basis for Officer Burton to ever report any supposed disruption to Senator Pierce in the first place, then your client can't rely on the order issued by Senator Pierce to say, oh, well, I had probable cause, so therefore I'm off the hook. No, no, no, no, because probable cause, by the time Officer, first of all, it wasn't Officer Burton. It was Kabaki and it was Trapp. And Officer Burton really was not involved in any of this. Secondly, Wait, wait, he's the one who first goes into the overflow room and reports that there are some issues there. What he did was he asked the plaintiff to please calm down and calm the audience down, okay? It wasn't in his domain to issue any orders. So, at the deposition, again, we weren't there defending a motion for summary judgment. We weren't even involved in the case at that time. In the context of the motion for summary judgment, he gave certain testimony and didn't give other testimony, and he was answering each question as he saw fit. However, Your Honor, I think you have to, I think anybody has to recognize, two days later, all Officer Burton was doing was, he was, it was his job to guard the Senate. And he had an order. Well, that's a different issue than the one that Judge Walsh, I mean Judge Watcher is talking about. I understand. You're using him. Who besides your client allegedly told the Senate President that there was a disruption in the overflow room? Who decided that? No, who besides him is alleged to have told the Senate President there was a disruption? Kabaki, I guess that was, and Trapp. Do you know where in the record? No, I don't. And you know why I don't know in the record, Your Honor? That wasn't, we were never accused of anything to do with that. If you have the record, you come here to argue. No, I'm coming here just to argue. The only thing we were ever accused of in this case was on two days later. When a judge asks you the question about the record, we expect you to be prepared to answer the record. I am prepared, but that was not my record. I wasn't a party in the case anymore. If you don't want to answer, that's fine. No, it's not that I won't answer. We weren't involved in that part of the case. We were gone. I'm giving you a full pardon. If you know, is there a place in the record that indicates that Officer Kabaki and Officer Trapp gave information to the Senate President that there was a disruption in the overflow rest? I know that that is going to be something that my colleague is going to argue. Okay, so you don't know in the record. I don't know. Because all we were ever accused of, Your Honors, from the very beginning of this case was two days later. We were just accused of not — the only thing we were accused of, my client, is that when he was on guard a full two days later, February 24th, not the 22nd, he had an order. He was at the desk in the front of the building, and he had an order that told him from the President of the Senate, you can't let Mr. Reza in. And Mr. Reza came in, and Trapp said, you have to leave. Let me just — I totally understand where you're at. So you're saying — tell me if this is wrong — that there were no allegations in, I think it's the First Amendment complaint, that alleged that your client knew there was no basis in the first place for the issuance of the order? That's right. We weren't even a part of that. We were accused of unfairly arresting him on the basis of the state law trespassing act. It was always a very minor part of this case. And that's why when you asked me parts of the record to do with the motion for summary judgment, I didn't defend it. I wasn't a part of it. And my role — even when we filed our brief, we said, we are only dealing with the qualified immunity having to do with two days later in this case. And even when my client gave his deposition, he was just a witness at that point. So we're saying that just as you found in the Norse case, and we are also relying on that case, when you held that the sergeant at arms there, Baker, had qualified immunity, because even if he was wrong and he actually took somebody out, ejected somebody from the hearing, which my client didn't do, he had reasonable reliance on the order. Okay. I think we've got to let your colleagues — All right. Thank you. You've used much of his time. Let's hear about Senator Pierce. Yes. Good morning, Your Honors. Lorne Unger on behalf of Coapelli, Senator Pierce. And I know my time is very limited. We're going to give you slightly more time. We have a few more cases, fewer cases today. It's an important case. We'll give you a little bit more time. Excellent. Do you have one more person that's going to speak as well or not? No, that's just a colleague. Okay. So you've got the balance. We'll give you — So that you'll get to my point, I'm going to ask my question first. I know you'd like to give the speech, but you're here to answer questions. You understand that. Okay. The issue that has been raised by the opposition is that there must be disturbance in the hearing room for there to be a proper use of the decorum, and that there's no evidence that the disruption, which is alleged to have taken place in the overflow, could be heard or in any way impacted the hearing room. Now, that was the argument. And so the question, number one, is that the fact? And if it is the fact, does that interfere with your case? Excellent question, Your Honor. The first point is that is not correct. The record actually does reflect that there were multiple disturbances that were heard in the sitting hearing room. Senators actually came and talked to Kibaki and said, hey, there's disturbances. Where do I find that? That's in Kibaki's declaration, and it's also in — Where on the record, E-R what or S-E-R what? That would be — that's U.R. 133 to 135. Okay. And that will show that there were other people, including Senator Pierce, I assume, who heard disturbances in the hearing room itself coming from the overflow room. And I should note as well, Officer Burton's testimony is not being actually accurately categorized. He does state that the noises in the overflow room could be heard in the sitting hearing room, and that's in his deposition testimony. That's E-R. I don't think that rises to the level of an actual disruption just because voices could be heard from another room, does it? And that brings me to my next point, the second part of Your Honor's question, is that this is not about disruption or actual disruption. This core issue in this case is about qualified immunity. And what Senator Pierce reasonably believed and what he relied on, he reasonably believed that there was actual disruption in the hearing room. Well, I think that that's the point, isn't it? Yes. Your adversary says there's no evidence of any disruption. Pierce was—Senator Pierce was there. He could observe. If there's no evidence of it, then how can we say that his belief is reasonable? Because Sergeant-at-Arms Gobacki. Okay. His Sergeant-at-Arms— What did he say? He comes in and says, Senator Pierce, there's multiple disturbances in the overflow room. I've had complaints from Senators. You've got to do something. He says he had complaints from Senators. That's correct, yes. I'm looking at his declaration, and he does not say what you just said. Is there some other source? Was Gobacki deposed? Is that what you're relying on? Well, there's also Pierce's declaration. Well, but, look, if Pierce is saying my source, right, is Gobacki, and we go to Gobacki and he's not backing that up, I think the plaintiff has raised a tribal issue of fact on that. Oh, absolutely not, because Gobacki had personal observations. He personally knew when he went in the overflow room. Right. So I'm looking at his declaration. Do you have it in front of you? Yes. Okay. Point us to the language that you're relying on. So if you look at U.R. 134, that's paragraph 13. Yep. A Senate member notified Sergeant-at-Arms Joe Gobacki of these disturbances, and Mr. Gobacki could hear them himself in his office. And then he goes in. What he's referring to, though, if you look at paragraph 12, is that the boos and cheers could be heard in the Senate hearing room from the overflow room. And that's my point just a second ago was that are you saying that that rises to the level of an actual disruption? It just sounds like, okay, I mean, sometimes people talk in the back of our courtroom. I mean, it's annoying, but I don't know that it's disrupting the hearing. When you're getting complaints from Senators that it's disrupting, disturbing the actual hearing itself, I would call that a disruption. I mean, that was clear that he was getting complaints that it was so noisy and so loud in that hearing room that the Senators were actually complaining to Sergeant-at-Arms that it was disrupting the hearing. And I would also urge the Court to consider that the overflow room is, in itself, in the actual hearing room itself, where the rules of the quorum do apply to the Senate building as a whole. I mean, if someone's going to go in the lobby and decide to just have a bullhorn that's going to go off, I mean, Senator Pierce has a right to escort that person out of the building. But ultimately, isn't it a question of whether the body the rules were designed to protect is being disturbed? So even if the overflow room is, in effect, part of the hearing room, isn't it incumbent upon Senator Pierce and those involved, if they want to meet our case law, to show that the boos and cheers were heard and that they disrupted what the Senate was doing? Not for purposes of qualified immunity. And I think the Court has to center in on that aspect here for the Senator. He was reasonably relying on his Sergeant-at-Arms to tell him that there were actual disturbances that were disturbing the actual hearing. He said, enforce the rules of the quorum. I have the enforcement mechanism to do that. You're my Sergeant-at-Arms. Please enforce those rules. Okay, let's listen. Counsel, will you listen to me? Of course. If the Sergeant-at-Arms gave information to Senator Pierce that does not rise to the level of a disturbance under our case law and Senator Pierce relied upon that, is he entitled to qualified immunity? He's entitled because qualified immunity provides for reasonable but mistaken judgment. He was reasonably told by Sergeant-at-Arms there was actual disruption. In other words, if the law itself was not complied with, but everybody was scared and they acted on the concept that this is a disruption, we're not going to permit this, then they're entitled to qualified immunity. Again, I think under Matos and all those cases where we're talking about a reasonable but mistaken belief, he's reasonably relying on his Sergeant-at-Arms to understand that there are actual disturbances that are interrupting the hearing. Kibaki just never says that the hearing was disrupted. I mean, looking at paragraphs 12 and 13 that you pointed us to, it just doesn't back up what you're saying, Counsel. Well, I think the court also has to go back and understand that Kibaki went in that room and he personally observed what he alleges as RZA being disruptive and violating the law. No, no, no, Counsel. Unless you're going to point us to something else, all we've got as to what Kibaki personally observed is what's in paragraphs 12 and 13. And I'll just read them to you so that we're clear. During the Disappropriations Committee hearing, the crowd in the overflow rooms— this is not grammatically correct— were sometimes heard cheering or booing in reaction to certain comments. So it was loud enough that the members in the committee hearing room could hear it. Then the key paragraph that you focus on says, A Senate member notified Sergeant-at-Arms Joe Kibaki of these disturbances. The these disturbances is not even disruptions. These disturbances is just the mere fact that members in the hearing room could hear, right, boos and cheers. And I think what Judge Smith is asking, if that report to Senator Pierce does not rise to the level of an actual disruption as our case law defines it, how could Senator Pierce be entitled to qualified immunity for that? Because the standard for qualified immunity is a reasonable reliance. I mean, he's reasonably relying on his Sergeant-at-Arms to inform him that there are disturbances that are disrupting the Senate hearing itself. He says, okay, enforce the rules of decorum, and he does that in a reasonably viewpoint-neutral way, and he does it reasonably to enforce the rules of decorum. He doesn't say, hey, he doesn't single out RZA. He doesn't say only the people who are opposing the bill can come out. He equally applies it to everyone and says, you know, you personally have personal knowledge of these issues. Go ahead and enforce those rules of decorum as to who you think you are disrupting. Are you arguing that at the time that Senator Pierce acted that our law in our circuit wasn't clearly established in saying that, you know, what he heard from Kibaki was enough? No, because, no, I think the Norse case actually goes along with this and says, you know, there has to be actual disruption. Okay, and what I guess I'm saying is that I look at Kibaki's declaration. I don't see him saying anything in there about an actual disruption. I understand that. He says he had personally observed Mr. RZA clapping and getting loud and that there was disturbances of the rules of decorum. So not only is there disruption, but it's a flagrant violation of the rules of decorum that he's going to say, hey, look, go ahead. There's an issue here. You know, Kibaki comes to Pierce and says there is disruption. It is disturbing. The Senators came and complained to him directly about it and said we need to enforce the rules of decorum. Does the fact – okay, I think it's clear from the conversation that we've had here that you acknowledge that the Norse case was around – the law was not vague on this point. You're saying that Senator Pierce was entitled to – if they made a mistake, it was a good faith mistake. But isn't that an issue of fact? Not at all, because as the trial court stated, even if we take as true the factual allegations from Mr. RZA, that Senator Pierce had absolutely no knowledge that he was in the building. So there was no viewpoint discrimination. I'm not talking about that. What I'm saying is if you're going to be entitled to qualified immunity, clearly if the law is not clear under Pearson, that's pretty clear. That's what we do with that. But in this case, if the law was clear about what a disturbance was and if boos and cheers that might have been heard by some folks does not rise to the level of a disturbance under the case law, then is there a mistaken belief, a reasonable belief, exception that would protect Senator Pierce and others in this case? Well, I would argue that there is – the facts clearly show that Senator Pierce was reasonably reliant on his Sergeant Armstrong informant that there were – the rules of the court were being violated and that there was disturbances. So, for example, let's just say somebody booed or cheered. It would – is that enough? Well, I think that's a violation of the rules of the court. Okay. So any noise at all, basically, is a violation of the rules of the court. Does that rise to a level of a disturbance? I would argue that the disturbance in itself is causing problems within the actual hearing room. What role, if any, should the murder of our colleague play on our analysis of the mindset of the people involved here? Does it play a role? Yeah. As in a premature case said, there has to be reasonable light of the circumstances. Here there's clearly a reasonableness within the situation that happened in the building in the Senate with the actual morning before Senator Christine Sinema said, I'm scared. I'm scared of my safety. At the press conference. At the press conference. Where they arrested four people. That very same day, yes. And, of course, you know, the tragic events with Jared B. Loughner and the death of Your Honor Boerall six weeks earlier. So, reasonableness in light of the circumstances, yes. Okay. Well, do any of my colleagues have any other questions? This is a difficult issue. All right. Thank you, counsel. Thank you. I hear a rebuttal. Thank you, Judge Smith. This court on page 976 of Norse said, we must respectfully reject the city's attempt to engage us in doublespeak. Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, non-proton disruption, or imaginary disruption. The city cannot define disruption so as to include non-disruption to invoke the aid of Norwalk, and that's what they just did. Let me ask you a question. Yes, Judge Wallace. In those cases that we've had before, people were ejected. Yeah. And they were in the hearing room. And they were ejected. And we said, no, you've got a right to say SIGCHI or whatever. There was no one here who was ejected. Yes, there was, Your Honor. It's just the ejection was the reason was the same. You were disrupted. No, no. Two days later, you were ejected. That is not my question. My question, was there anyone ejected from the hearing room or the overflow room? No. Shouldn't that make a difference? No, Your Honor. Because the First Amendment was not interfered with during the hearing. Well, Your Honor, it should make a difference, but that cuts against them. First, there was no disruption during the actual hearing. Otherwise, they would have thrown him out, and we would have agreed with them. But when they actually did throw Mr. Reza out. No, they didn't let him in. Well, he was already in, and then they threw him out. He was in the lobby, Your Honor, and that's undisputed. And he was going to do something that I think the First Amendment holds sacred. Okay. But they you don't have any problem with the person who's in charge, the senator, being able to eject people if they have interfered with the decorum. If they're actually disruptive, Your Honor, we feel that's 100 percent reasonable. And the reason why we think we should win in this case, and I'll conclude. No, don't conclude. It was at no time did the senator say, arrest Reza. No, but he said. He said to his people, find the people who caused the disturbance. And he should have said, cause the people who caused an actual disturbance. And if he didn't say that, the officer should have said, yes, Senator, but you understand, we can only eject the actual disruptive. They weren't asked to eject. They were asked to identify. And if you can get to my question specifically, it'll help me. I haven't made up my mind on this case. You don't need to argue with me over points. I don't mean to, Judge Wallace. Thank you. But it seems to me that there is an issue here that's different from our Ziegheil cases and the rest of those, where there's been no ejection, no interference with the First Amendment right at the hearing. Well, Your Honor, I do believe that there was a very significant interference with the First Amendment right, because for over 100 years, the courts have said that you have a First Amendment right to nondisruptively go to the Statehouse to speak to your elected representative. In my view, that is sacred and fundamental under the First Amendment. And it was based, Senator Pierce admitted it, and the officers admitted it. The only reason why he was kicked out on February 24th of 2011 was based upon Senator Pierce's order. So Senator Pierce set this in motion sloppily, unreasonably, and the officers are jointly liable for it, because instead of saying Senator Pierce, I mean, Officer Burton could have told Senator Pierce, I was there, he was a disruptive senator, but instead of doing that, they followed his order when they should have questioned it. And under this Court's recent opinion in Lacey v. Maricopa County, this Court says officers have a duty to question. Would it have been that difficult, Your Honor, for somebody to ask, what happened? Sure, we'll arrest him. What did this guy do? Did he actually disrupt the hearing? It's that simple, Your Honor, but absent that fundamental and simple factual question, the arrest could not have been reasonable. And if Your Honors have no questions, I see. Yes, Judge Smith? Again, arguendo. I understand. Let's assume, for discussion purposes only, that the record does not show that there was what amounts to a disruption under our case law, that the officers either didn't tell Senator Pierce or they told him something that did not rise to that level. From your perspective, what are we to do here? Do we send this back to the District Court for further fact-finding? Do we find that there is no qualified immunity and send it back? What do we do from your perspective? You deny qualified immunity and send it back for a trial on the merits. Because, Your Honor, if Senator Pierce got faulty information from these officers, Lacey v. Maricopa County, Federal Reporter 693, Fed 3rd, at page 924, quote, "'Officers have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed.'" That's basic law enforcement. What happened? What did this guy do? Like, using a code word of disturbance? That's not a license to arrest somebody willy-nilly, and that's why they're not entitled to qualified immunity, because their mistake has to be reasonable. And a reasonable State actor asks questions, okay, what did this guy do? Why should I arrest this guy in particular? Disturbance? I understand disturbance is a legal term of art, but it also happens in fact. It would be easy to imagine someone disturbing this proceeding right now. It happens all the time. There's nothing in the record that reflects that. The affidavit of Pierce doesn't say there was an actual disruption in the Senate room. It also doesn't say that Mr. Reza caused it. Officer Trapp doesn't even say that there's a disturbance in the hearing room. And Officer Burton testified on the record that he knew that there wasn't an actual disturbance in the hearing room. Even though he proceeded to arrest Mr. Reza, that is an absence of probable cause, evidenced by the fact he was never prosecuted. So the only question is, was it a reasonable mistake? And based upon the lack of facts suggesting an actual disturbance in the actual hearing room caused by anyone, including my client, Mr. Reza, that means that qualified immunity was not an issue because the reliance was not reasonable. Pierce should have said, only arrest people who actually disturbed. And if he didn't say that, the officers should have said, Senator Pierce, we'll arrest anyone that you want us to who actually disturbed, because that did not transpire or there's no reflection of that transpiring in this record. The district court's order must be reversed. And if there are no further questions, I'll thank Your Honors and wish you a good morning. Thank you all. Any other questions? Thank you. Thank you for an interesting argument. Thank you very much. This is an interesting and challenging case. The case just argued is submitted.
judges: Wallace, Smith, Watford